AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: [signature] 2/16/22

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No. M-22-115   -STE
A GRAY MOTOROLA MODEL MC36 CELLULAR PHONE WITH )
UNKNOWN SERIAL NUMBER, CURRENTLY LOCATED AT )
STILLWATER POLICE DEPARTMENT, 723 S. LEWIS ST., )
STILLWATER, OK 74074 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841 | Possession of Controlled Substances with Intent to Distribute |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

D. HUNTER MARSH, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: **Feb 16, 2022**

_____
Judge's signature

City and state: Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A GRAY MOTOROLA MODEL MC36 CELLULAR PHONE WITH UNKNOWN SERIAL NUMBER, CURRENTLY LOCATED AT STILLWATER POLICE DEPARTMENT, 723 S. LEWIS ST., STILLWATER, OK 74074 | Case No. MJ-22-115-STE |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Daniel H. Marsh, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device identified below and in Attachment A currently in law enforcement possession—and the extraction from that property of electronically stored information described in Attachment B, which constitute evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). As a SA, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and empowered by law to conduct investigations of, and to make arrests for offenses as set forth in 18 U.S.C. § 2516.

3. I have been employed as a Special Agent with the FBI since February 2009. I am currently assigned to the Oklahoma City Division, Stillwater Resident Agency and I

have been involved in a wide variety of investigative matters, including investigations targeting large criminal enterprises, many of which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. During the course of these investigations, I have participated in several Title III investigations, coordinated the execution of search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. Through my training and experience, I have become familiar with some of the manners in which illegal drugs are imported, distributed, and sold, as well as the methods used by drug dealers to disguise the source and nature of their profits.

4. Through my training and experience, I have become familiar with and used all normal methods of investigation, including, but not limited to, visual surveillance, witness interviews, search and arrest warrants, confidential human sources, pen registers, undercover agents, and court authorized wiretaps.

5. The statements contained in this Affidavit are based on my personal investigative efforts, information provided by other federal, state, and law enforcement officers, the analysis of information obtained from surveillance, information from confidential sources, and other reports and documents. It is also based on my training and experience as a Special Agent of the FBI and a Peace Officer in the State of Oklahoma. Except where otherwise noted, the information set forth in this Affidavit has been provided

to me directly or indirectly by Special Agents of the FBI or other law enforcement officers. Unless otherwise noted, wherever in this Affidavit I assert a statement was made, the information was provided by another law enforcement officer (who may have either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations, but rather observations provided directly or indirectly by other law enforcement officers who have conducted such surveillance.

6. I have participated in this investigation through surveillance, assisting in search warrants, interviews of witnesses, the review of documents and evidence to include but not limited to phone(s) which were searched by other law enforcement agencies through the use of search warrants in parallel investigations, jail communications, and an analysis of information obtained from other agents and law enforcement officers. Since this Affidavit is being submitted for the limited purposes of establishing probable cause for a search of the property described in Attachment A, I have not included each and every fact known concerning this investigation.

7. Based on my training and experience and the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed by Kevin Colby NICHOLAS and Nicole Elizabeth HILL. There is also probable cause to search the property described in Attachment A for evidence of these crimes, as described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8. The property to be searched is a gray Motorola Model MC36 cellular phone with unknown serial number (hereinafter, the **DEVICE**). The **DEVICE** is currently located at Stillwater Police Department, 723 Lewis St., Stillwater, Oklahoma 74074.

9. The requested warrant would authorize the forensic examination of the **DEVICE** for the purpose of identifying electronically stored data that is particularly described in Attachment B, which constitute evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846. The requested warrant would also authorize the seizure of the items and information specified in Attachment B.

## FACTUAL BACKGROUND

10. The **DEVICE** was seized pursuant to the arrest of NICHOLAS by Oklahoma Highway Patrol (OHP) on December 16, 2021.

11. In October 2021, FBI identified a residence located at 513 Beil Terrace, Oklahoma City, Oklahoma 73109 (hereinafter, the "Beil Residence") as a location maintained for the purpose of distributing narcotics. In discussions with Oklahoma City Police Department (OCPD), it was determined that the Beil Residence had been identified in prior drug investigations by the OCPD over the last eighteen months. Law enforcement had identified HILL as the owner and primary resident of the Beil Residence. Based on this information, FBI initiated surveillance of the Beil Residence in coordination with the DEA and OCPD.

12. Over the course of the next couple of months, law enforcement observed a number of known methamphetamine users and suppliers visiting the Beil Residence,

including individuals with historical or current drug trafficking charges and convictions. These individuals were observed at all hours of the day and several days per week. Law enforcement would observe individuals arrive at the Beil Residence and stay for only five to fifteen minutes before leaving. On daily, and sometimes hourly, basis, a vehicle would arrive at the Beil Residence with only the passenger exiting the vehicle while the driver stayed in the car. After a brief visit, the passenger would return to the vehicle. In my training and experience, these observations are consistent with distribution of controlled substances from a residence.

13. Based on the surveillance, law enforcement determined that NICHOLAS was also living at the Beil Residence because of his daily activities and physical presence at the property. Law enforcement observed a number of individuals waiting outside the Beil Residence until NICHOLAS would open the front door. Law enforcement also observed a 2001 white Chevy Blazer with Oklahoma license plate JQU-092. This vehicle is registered to both NICHOLAS and HILL with a registration address of the Beil Residence, effective October 6, 2021.

14. On the morning of December 16, 2021, NICHOLAS and Michael Young were arrested incident to a felony traffic stop by OHP. Subsequent to the traffic stop and a search of the vehicle, OHP Troopers discovered more than 100 grams of a crystal substance presumptively positive for methamphetamine, 70 pills that field tested as fentanyl, 70 grams of a white powder that field tested as cocaine, other controlled substances, and a stolen firearm. Both NICHOLAS and Young were arrested and charged with drug trafficking of methamphetamine and fentanyl, among other charges.

15. OHP also determined that NICHOLAS was in possession of the **DEVICE** and seized the **DEVICE** from NICHOLAS. The **DEVICE** is currently located at the Stillwater Police Department, located at 723 S. Lewis St, Stillwater, Oklahoma 74074. Based on my training and experience, I know that the **DEVICE** has been stored in a manner in which its contents are (to the extent material to this investigation) in substantially the same state as they were when the **DEVICE** first came into the possession of the FBI.

16. OCPD also discovered numerous indications that NICHOLAS and the Beil Residence were associated with the United Aryan Brotherhood (UAB), which is a prison gang based in Oklahoma. Law enforcement observed NICHOLAS and other male associates or customers at the Beil Residence wearing clothing with lightning bolts. These lightning bolts are associated with the UAB. Additionally, law enforcement observed individuals, including NICHOLAS, wearing attire with messages such as "FREEWOLFHEAD" or "FREEKNUCKLEHEAD." "Wolfhead" is a nickname associated with Chance Wilson, and "Knucklehead" is a nickname associated with Kyle Morris. Both Wilson and Morris are senior members of the UAB.

17. Based on my training and experience, I know that the **DEVICE**—or devices similar to it—has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and a PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

18. Based on my training and experience, I know that drug trafficking is often a conspiratorial crime. Individuals who possess controlled substances with the intent to

distribute them typically do so in groups and with the assistance of others. Drug traffickers often use their cell phones to communicate with other members of the drug-trafficking organization. Records of these communications and the contact information of co-conspirators are often saved on cell phones.

19. Based on my prior investigations of criminal activity involving prison gangs, to include drug trafficking, felony assaults, and threats to witnesses, I have determined that cell phones and communication are critical to the furtherance of such activity because incarcerated members of the prison gang must communicate with those members outside of prison. Therefore, cell phones typically hold information related to buyers and sellers of narcotics, timing of drug transactions, disposition of drug proceeds, addresses of stash locations, and communicating threats related to drug activity. Drug traffickers will often have multiple phones and change their phones if they are concerned about being under investigation by law enforcement. Despite the change in phones, drug traffickers will continue to maintain contacts through applications and social media profiles. Information from prior UAB-related investigations have determined that UAB members will often use multiple social media platforms and user profiles to hide activity from law enforcement and will often use communication applications that are only accessible on a mobile device such as a cell phone.

20. Based on my training and experience, I know that drug traffickers often take and store photographs of themselves with controlled substances and the proceeds of drug sales, and usually take or store these photographs using their personal cell phones.

21. Based on my training and experience, I know that electronic devices like the **DEVICE** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools. This is true even if the user of the **DEVICE** deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

22. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **DEVICE** consistent with the warrant. The examination may require law enforcement to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

23. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **DEVICE**, as described in Attachment A, to seek the items described in Attachment B.

Respectfully submitted,

*(signature)*

D. Hunter Marsh
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on February 16, 2022:

*(signature)*

SHON T. ERWIN
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a gray Motorola Model MC36 cellular phone with unknown serial number, hereinafter the "Device." The Device is currently located at 723 S. Lewis St, Stillwater, Oklahoma 74074. Two photos of the Device are below:





This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of the crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely a violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846:

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Kevin Colby NICHOLAS and Nicole Elizabeth HILL from October 1, 2021, to the present, including:

   a. lists of customers and related identifying information;

   b. lists of co-conspirators and related identifying information;

   c. records of communications with customers or co-conspirators, whether such communication be a telephone call, text message (e.g., SMS or MMS), instant message, or communication through an application stored on the phone;

   d. records detailing the types, amounts, or prices of drugs trafficked, as well as dates, places, and amounts of specific transactions;

   e. any information related to the sources of drugs, including names, addresses, phone numbers, or any other identifying information);

   f. any audio recordings, pictures, video recordings, or still-captured images on the Device related to the purchase, sale, transportation, or

     distribution of controlled substances or the collection, transfer or laundering of drug proceeds;

  g. all bank records, checks, credit card bills, account information, and other financial records; and

  h. any location data related to the acquisition or distribution of controlled substances.

2. Evidence of user attribution showing who used or owned the Device described in Attachment A at the time the things described in this warrant were created, edited, or deleted, including:

  a. logs, phonebooks, saved usernames and passwords, documents, and browsing history;

  b. text messages, multimedia messages, email, email messages, chats, instant messaging logs, and other correspondence;

  c. photographs;

  d. records of Internet Protocol addresses used; and

  e. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.